UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| HOOSIER ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:19-cv-00071-TLS-JEM |
| NATURAL PRAIRIE INDIANA FARMLAND HOLDINGS, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

## Natural Prairie's Reply Brief in Support of Summary Judgment on Plaintiffs' Claim under the Administrative Procedure Act

Plaintiffs respond to Natural Prairie's motion by submitting entirely new and previously undisclosed affidavits professing an attenuated "injury in fact" manufactured for the purpose of avoiding summary judgment. They say that the Corps' AJD allowed Natural Prairie to "manipulate" surface and ground water flow at its farm, that this "manipulation" may in the future somehow negatively impact the flow of surface and groundwater at nearby nature and conservation areas, that they collectively and individually use these nature and conservation areas, and that they therefore have an injury in fact that is fairly traceable to the AJD. There are two dispositive flaws in Plaintiffs' argument.

*First*, despite the Plaintiffs' efforts to spin this purported change of surface and groundwater flow as an "injury in fact" that is "fairly traceable" to the AJD, they are nevertheless arguing generalized environmental harm. While this generalized harm may be enough to satisfy standing to pursue claims under specific federal environmental statutes, there is no caselaw that has granted such broad standing to seek judicial review of a Corps' AJD under the APA. This is significant. Precedent addressing judicial review under the APA is understandably scarce. Indeed, only recently has the Supreme Court opened such claims to *landowners* whose cognizable property rights were directly impacted by an AJD. There is no support to extend APA standing to plaintiffs who can demonstrate no direct injury by an AJD.

*Second*, even if it was possible for generalized environmental harm to bestow standing for judicial review of an AJD, Plaintiffs fail to sustain that burden here. Their affidavits and other evidence in support were never disclosed to the Defendants, are untimely and unduly prejudicial, and, as such, should not be considered in resolving Natural Prairie's motion. The Federal Defendants have submitted a well-reasoned opposition to Plaintiffs' attempt to improperly supplement the record (*see* Dkt. 64 at 27-42) and Natural Prairie hereby joins in those arguments. Moreover, Plaintiffs concede that they are not an "affected" party under the APA as to the AJD. (Resp. at 19). Their argument that they are merely aggrieved parties (and therefore need not exhaust administrative remedies) demonstrates the lack of any legal consequence upon Plaintiffs.

Regardless of what the AJD determined, Plaintiffs' rights (and separate claim) under the Clean Water Act remain undisturbed. None of the hallmark standards for either Constitutional ('injury in fact'; 'fairly traceable to the actions of the defendant,' or 'redressed by a favorable decision') or APA standing ("legal consequences will flow;" "no other adequate remedy in a court") are presented by Plaintiffs. For these reasons, the Court need not even reach the merits of the APA claim, as it is an improper request for judicial review.

Finally, the Federal Defendants have moved for summary judgment correctly arguing that the Plaintiffs' APA claim lacks merit. Natural Prairie joins with the Federal Defendants in this briefing. Indeed, because Plaintiffs cannot demonstrate, as a matter of law, that the Federal Defendants acted arbitrarily or capriciously or otherwise abused their discretion in issuing the AJD, Plaintiffs' APA claim must fail.

1. ***Plaintiffs ask this Court to extend* Hawkes *beyond its factual foundation without any cited authority supporting this conclusion.***

Plaintiffs' arguments in support of standing principally rely on the Supreme Court's decision in *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S.Ct. 1807, 1812 (2016). According to Plaintiffs, the holding in *Hawkes*—that a property owner could seek judicial review of an AJD issued by the Corps—entitles the non-property-owning Plaintiffs here (environmental groups and distant neighbors) to maintain an APA claim regarding an AJD the Corps issued to Natural Prairie. But far from bolstering Plaintiffs' position, *Hawkes* clearly supports the proposition that non-parties that cannot

3

demonstrate a "direct and legal consequences" to property they own do not have standing under the APA.

In *Hawkes*, the respondents were three companies engaged in mining peat who sought a permit from the Corps to discharge material on property *that they owned and hoped to mine. Hawkes*, at 1809, 1812. Throughout its opinion the Supreme Court focuses solely on "direct and legal consequences" on *property owners* who are the subject of AJDs. *Id.* at 1814, 1815. For instance, a negative AJD provides a landowner with a five-year safe harbor against CWA litigation brought by the government. The Court was careful to note that this "direct and legal consequence" only precluded suits brought by the Corps or EPA and did nothing to prevent CWA citizen suits pursued by environmental groups. *Id.* (specifically stating a "property owner may still face a citizen suit under the Act"). The Court's discussion supports two important deductions. First, "direct and legal consequences" must be those of the plaintiff seeking judicial review. Those "direct legal consequences" do not exist here for our Plaintiffs. And, second, the discussion emphasizes a point Natural Prairie has repeatedly made—that Plaintiffs have a separate adequate remedy at law, namely their Clean Water Act citizen suit against Natural Prairie.

Moreover, to the first deduction, the Fifth Circuit has noted that all courts prior to *Sackett* had held that even the landowner subject to the AJD could not pursue judicial review because the Corps' AJD did not determine rights or obligations. *See e.g., Belle Co.*

*v. U.S. Army Corps of Engineers*, 761 F.3d 383, 390-91 (5th Cir. 2014), *cert. granted, judgment vacated sub nom*. In *Belle*, the plaintiffs were a property owner (Belle Company, LLC) and prospective purchaser (Kent Recycling, LLC) who wanted to buy Belle's land to use as a solid waste landfill. *Belle*, 761 F.3d at 386. A regulatory impediment to the transaction arose when the Corps issued an affirmative JD declaring that the property contained wetlands. *Id.* Both Belle and Kent Recycling sued under the APA alleging that the JD was unlawful and should be set aside. The trial court dismissed the action (on the government's jurisdictional motion) and the Fifth Circuit affirmed as noted above. It is true that *Hawkes* reverses the holding in *Belle*, but *Hawkes* only did so as to *landowners* and the Supreme Court's reasoning has not and cannot be extended to third-parties like the Plaintiffs.

The Federal Defendants reference the Fifth Circuit's post-*Hawkes* decision in *Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) as a case that extends APA standing to those without direct injury, but that decision is plainly distinguishable from the instant facts. In *Texas v. EEOC*, the EEOC issued regulatory guidance prohibiting the exclusion of felons from employment. As a large public employer, Texas routinely screened felons from various jobs under its state laws. Texas filed an APA action arguing that it must "choose either to 'violate state and local laws or ignore the EEOC's rule and risk an enforcement action." The EEOC noted to the Court that it only had the power to investigate claims against state

5

employers, but could not initiate an enforcement action against Texas.[1] *Id.* at 439. The Fifth Circuit was not convinced and found that the EEOC's enforcement limitations to be insignificant, holding that the regulatory guidance "force[d] [Texas] either to alter its conduct, or expose itself to potential liability." *Id.* at 446. In short, *Texas v. EEOC* does not extend the *Hawkes'* holding but rather adheres to jurisdictional limitations prohibiting APA review by third parties who **are not** forced to alter their conduct because of the disputed agency action and who **are not** exposed to any liability as a result of the agency action.

Plaintiffs suggest that Natural Prairie adds to the law on standing requiring ownership of property to bring an APA claim. This misreads Natural Prairie's brief. Certainly, Natural Prairie highlighted the fact that Plaintiffs are not owners of the property subject to the AJD. But Natural Prairie plainly argued that "the only 'injury' to Plaintiffs is that they believe the Corps should have reached different conclusions regarding Natural Prairie's property." (Br. at 12-13). Plaintiffs' difference of opinion with the Corps does not rise to the level of legal consequences required under 5 U.S.C. § 702.

Plaintiffs are silent in response to Natural Prairie's argument that the AJD does nothing to impede the Plaintiffs' Clean Water Act citizen suit. Plaintiffs' silence is

---

[1] The EEOC could issue "right-to-sue" letters to applicants denied employment. *See id.* at 439.

deafening and amounts to an admission that they have no response to it.[2] The Supreme Court has recently noted, in a case issued well after *Hawkes* and *Sackett*, that regardless of an agency's jurisdictional determination regarding the Clean Water Act, "there is always the possibility [on landowners] that a citizen suit will result in a very costly judgment." *Cty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1489 (2020). Both *Sackett* and *Hawkes* found APA standing because of the legal consequences imposed by the government on the property owners in those cases. Importantly, however, the Supreme Court in *Hawkes* did not end its analysis at finality. Rather, as the Court made clear: "[e]ven if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *Hawkes*, at 1815. In *Hawkes*, the Corps argued that the landowner had two potential alternatives: "[1] discharge fill material without a permit, or [2] apply for a permit and seek judicial review if dissatisfied with the results." *Id.* The Supreme Court rejected the first alternative because proceeding without a permit presented the risk of "serious criminal and civil penalties" and thus there was no adequacy for that alternative. *Id.* The Court rejected the second because of

---

[2] The Federal Defendants also have filed a brief responding to Natural Prairie's motion. (Dkt. 62.) Their brief takes issue with the form as opposed to the substance of Natural Prairie's legal arguments. That is, they disagree with Natural Prairie's argument that the AJD is not a final agency action as to the Plaintiffs, but they stop short of advocating for Plaintiffs' standing to bring their APA claim. The Federal Defendants likewise take no position on whether Plaintiffs' CWA claim acts as an "other adequate remedy" that would preclude the APA claim.

the time and money needed to seek judicial review and because a permit would not remedy flaws in the AJD. *Id.*

Plaintiffs argue that the "lessening of aesthetic, recreational, and spiritual interests – irrespective of property ownership can support the requirements of standing." (Plaintiffs' Br. at 5.) But Plaintiffs rely solely on cases, often involving permits to discharge pollutants or forest management plans and are plainly distinguishable.[3] For example, in *Sierra Club v. Marita*, environmental groups opposed timber harvesting and road construction and reconstruction. The Seventh Circuit noted that the environmental groups had an undisputed legal interest in the public forests and were allowed to pursue review of that permit. *See Sierra Club*, 46 F.3d 606 (7th Cir. 1995) (citing *Sierra Club v. Morton*, 405 U.S. 727, 732, (1972)). Here, Plaintiffs attempt to stretch their use of nature and conservation areas (i.e. wildlife habitats) **near** Natural Prairie's property into standing for their APA claim; however, the agency action at issue does not permit or otherwise allow Natural Prairie to take any action—let alone action that actually impacts the nature and conservation areas.[4]

---

[3] Plaintiffs' citation to *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) is curious as the discussion shows that even some legal owners of property do not have standing. *Id.* (noting the lack of standing for owners who "do indeed 'own' the property, but hold title to it for somebody else.")

[4] Indeed, Plaintiffs have already attacked the permit issued by the Indiana Department of Environmental Management ("IDEM") which allowed Natural Prairie to build and operate its farm. This permit is called a Confined Feeding Operation Approval and has specific groundwater monitoring requirements as well as requirements for Natural Prairie to address any detected contamination. Plaintiffs to this lawsuit filed a Petition for Administrative Review of that

8

Plaintiffs cite *Friends of the Earth v. Laidlaw Envtl Servs.* (528 U.S. 167), but that case held that individuals have standing *for a Clean Water Act claim* based on past discharges of pollutants in excess of the Defendants' NPDES permit to waters frequented by the plaintiffs. *Id.* at 181 (litigant could not fish, camp, or swim in the river because of concerns regarding Defendant's past discharges). Natural Prairie *does not* attack the Plaintiffs' standing for their Clean Water Act claim in this motion. Ultimately *Friends of the Earth* does not involve an APA judicial review of the NPDES permit and makes no proclamation regarding a plaintiff's standing for judicial review of the AJD, it offers no support for Plaintiffs' position here.

Moreover, the Plaintiffs' cases are clear that "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that *the party seeking review be himself among the injured.*" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992) (emphasis added). There is no injury here. Environmental groups generally, and the Plaintiffs here specifically, have exactly the same rights and duties after the issuance of a jurisdictional determination is made regarding someone else's property as they did before it was made. Jurisdictional determinations are not the same as environmental permits or forest management plans – they merely reflect the government's analysis of the applicability of the Clean Water Act.

---

Approval before the Indiana Office of Environmental Adjudication ("OEA") which they recently lost. On July 13, 2020, they filed a Petition for Judicial Review of the Approval in the Marion Superior Court which is currently pending.

In summary, Plaintiffs have the burden of showing that they satisfy the requirements of APA standing. *See Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). Plaintiffs have not identified any legal consequences the AJD has placed on them. Their references to cases holding (a) that property owners face legal consequences from an AJD, or (b) that environmental interests give such Plaintiffs APA standing for discharge permits or forest management plans do not assist Plaintiffs. In the words of the Seventh Circuit because "legal consequences, rights, or obligations do not flow from [the AJD]," environmental groups do not have standing under the APA for judicial review of a Corps' jurisdictional determination. *See Coal. to Save the Menominee River Inc. v. US Envtl. Prot. Agency*, 423 F. Supp. 3d 560, 572 (E.D. Wis. 2019)

**2.** ***Even if* Hawkes *could be extended to environmental groups, this Court should not do so here.***

Even presuming that environmental groups could theoretically sustain their burden on standing in light of an AJD, Plaintiffs in this case do not meet their burden. Plaintiffs have a fully adequate remedy under the Clean Water Act to litigate their claims against Natural Prairie relating to Natural Prairie's use of the property. Contrary to the position stated in the briefs, the AJD's findings ***do not injure*** Plaintiffs' recreational and aesthetic interests in any way. Instead, the best the Plaintiffs can argue is that the actions of Natural Prairie might alter nearby environmental conditions.

As noted above, Plaintiffs' standing affidavits and other evidence in opposition to the summary judgment motion were not previously disclosed to the Defendants. This

10

new evidence even includes expert testimony that was not before the agency at the time of the agency action. This "trial by ambush" tactic was a direct contradiction to the strategy Plaintiffs had placed before this Court: APA judicial review must be made solely on the administrative record. This reversal makes it even more clear why third parties – who Plaintiffs claim have no role in the administrative proceeding - should not be permitted to initiate judicial review of an AJD.

But even if the Court considers the Plaintiffs' new evidence, the Plaintiffs do not allege past or current impacts to the Kankakee Sands or Kankakee River. Instead, their Clean Water Act claim relates to future impacts that they speculate could possibly occur. (*See e.g.*, Bumgardner Aff. ¶28, 31 ("will alter," "will have," "will diminish," "if the water and/or habitat quality…is degraded."). *Compare with Friends of the Earth v. Laidlaw Envtl Servs.* (528 U.S. 167) (litigant could not fish, camp, swim in river because of his concerns regarding Defendant's past discharges). The Supreme Court in *Lujan* plainly rejected "some day" intentions as sufficient demonstrations of an injury sufficient to prove standing. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 567 *("*Such "some day" intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the "actual or imminent" injury that our cases require."). The Court made clear that "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an

area roughly 'in the vicinity' of it." *Id.* (citing *National Wildlife Federation*, 497 U.S. 887–889).

Beyond legal consequences, Plaintiffs also fail to explain how the AJD – and the findings with which they disagree – have "no other adequate remedy in a court." (5. U.S.C. 704). As stated above, Plaintiffs can fully and adequately review the Corps' findings in their Clean Water Act case. They cite no authority where the Corps' AJD formed the basis of issue preclusion because the environmental group had not challenged the AJD. They offer no evidence of any kind to suggest that the AJD impedes their Clean Water Act claim. For this reason, even if Plaintiffs could demonstrate legal consequences against them from the AJD, the APA claim fails as a matter of law.

**3.** ***Natural Prairie joins Federal Defendants in opposing Plaintiffs' APA Claim on the merits***

Natural Prairie joins with the Federal Defendants on the merits briefing as to Plaintiffs' APA claim. The Federal Defendants explain at length in their opening brief (Dkt 64) the multitude of reasons why this Court should enter judgment on Count II in favor of the Federal Defendants and against Plaintiffs on the APA claims. Most plainly, the Corps demonstrated the ample evidence supporting its reasoned decision that Natural Prairie's site did not contain wetlands. Second, the Corps' reasonable determination that certain "ditches" were not waters of the United States was also reasonably investigated and amply supported by the record evidence. In short, Plaintiffs

cannot meet their heavy burden to show that the AJD was arbitrary and capricious or an abuse of discretion based on the record evidence.

Natural Prairie also joins the Federal Defendants in opposing Plaintiffs' motion to supplement the administrative record. The motion to supplement the administrative record was directly contradicted by Plaintiffs at multiple instances prior to the Court's summary judgment deadline. The Court should not allow Plaintiffs to shift their strategy at this stage, which would greatly prejudice Natural Prairie. Even if the Court would consider the motion to supplement, Plaintiffs fail to meet the standards for supplementation of the record. Most egregiously, Plaintiffs' attempt to insert a new expert into a claim for judicial review at this late stage is wholly improper.

# Conclusion

For all these reasons, this Court should grant summary judgment in favor of Natural Prairie and against Plaintiffs as to the APA claim.

Respectfully submitted,

s/ *Bradley R. Sugarman*
Bradley R. Sugarman (#22152-49)
Andrew M. McNeil (#19140-49)
Daniel P. McInerny (#10337-71)
Seth M. Thomas (#25834-49)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 Fax
BSugarman@boselaw.com
AMcNeil@boselaw.com
DMcInerny@boselaw.com
SThomas@boselaw.com

*Attorneys for Defendant Natural Prairie Indiana Farmland Holdings, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020, a copy of the foregoing "Natural Prairie's Reply in Support Its Motion for Summary Judgment on Plaintiffs' APA Claim" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Kim E. Ferraro, Esq.
Hoosier Environmental Council
541 South Lake Street
Gary, Indiana 46403
kferraro@hecweb.org

*Attorneys for Hoosier Envtl. Council, Ind. Audubon Soc'y, Thomas Cutts, Debra Cutts, Alyssa Nyberg, and Steven Cowley*

Jeffrey B. Hyman, Esq.
Conservation Law Center
116 South Indiana Avenue, Suite 4
Bloomington, IN 47408
jbhyman@indiana.edu

*Attorney for Hoosier Envtl. Council, et al.*

Benjamin R. Carlisle, Esq.
U.S. Department of Justice
Envtl. & Natural Res. Def. Section
P.O. Box 7611
Washington, D.C. 20009
benjamin.carlisle@usdoj.gov

*Attorneys for U.S. Army Corps of Engineers*

/s/ *Bradley R. Sugarman*
Bradley R. Sugarman