UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

HOOSIER ENVIRONMENTAL COUNCIL, *et al.*,

    Plaintiffs,

v.                                                                                  CAUSE NO. 4:19-CV-71 DRL-JEM

NATURAL PRAIRIE INDIANA
FARMLAND HOLDINGS, LLC, *et al.*,

    Defendants.

## OPINION & ORDER

Hoosier Environmental Council (HEC) and Indiana Audubon Society (IAB)—two environmental advocacy associations—and three citizens with downgradient residential wells sued both Natural Prairie Indiana Farmland Holdings, LLC and the Army Corps of Engineers claiming violations of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1344, and the Administrative Procedures Act, 5 U.S.C. § 706(2). In inheriting this case, the court received pending dismissal and summary judgment motions. By separate opinion, the court addresses the summary judgment motions under the APA. This opinion concerns only the motion to dismiss the CWA claim.

Natural Prairie owns a dairy farm in Newton County, Indiana. The company purchased land to build and operate a concentrated animal feeding operation (CAFO) housing over 4,350 dairy cows, three production buildings, and a nine-acre open air waste lagoon. The farm sits on the site of a former lake, Beaver Lake, drained in the early 1900s. The associations claim that the land is farmed wetland and protected by federal law. Natural Prairie wants the suit dismissed (or the references to wetland stricken). The court denies the motion.

DISCUSSION

Natural Prairie seeks to dismiss the complaint because it says no wetlands exist at the site. The company claims the use of "farmed wetland," as defined in 7 C.F.R. § 12.2, comes from the Food Security Act of 1985 and remains inapplicable to a CWA claim. The associations counter that the Corps defines farmed wetlands by reference to the Food Security Act. Both argue then whether the complaint plausibly adumbrates a CWA claim.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.,* 623 F.3d 1143, 1146 (7th Cir. 2010). To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Evaluating whether a claim is plausible enough to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

Congress passed the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); *see also Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1020 (7th Cir. 2018). The CWA prohibits the discharge of any pollutant, except in express circumstances. 33 U.S.C. § 1311(a). The CWA requires a permit "for the discharge of dredged or fill material" into waters of the United States. 33 U.S.C. § 1344(a); *see Rapanos v. United States*, 547 U.S. 715, 723 (2006) (defining such material as "solids that do not readily wash downstream"). These waters include "wetlands adjacent to U.S. waters." 33 C.F.R. § 328.3 (1993).

2

There is a difference between "farmed wetlands" and "prior converted cropland." The second is exempt from regulation under the CWA because the land has been so modified and degraded by farming activity that it no longer exhibits its natural hydrology or vegetation. *See* 7 C.F.R. § 12.2(4) (under "wetland"); United States Army Corps of Eng'rs, *Corps of Engineers Wetlands Delineation Manual* (1987) [R. 105].[1] Farmed wetlands aren't exempt—save for that measure of wetlands that were transformed into dry land for various purposes before the CWA's permitting provisions became effective. *See* 7 C.F.R. § 12.2 (under "wetland determination"); *Boucher v. United States Dept. of Ag.*, 934 F.3d 530, 534 (2019) (distinguishing converted wetland). The associations in part claim that the farm is a "wetland" that requires a dredge and fill permit under the CWA.

Natural Prairie argues that the associations plead the farm's history in a way that establishes that, for the past century, it has been converted and used as cropland. Natural Prairie thus maintains that this suit cannot proceed because prior converted cropland isn't covered by the CWA. In making its pitch, the company says the associations improperly coopt the definition of "farmed wetland" under the Food Security Act of 1985.

On this last point, the company errs. A 1993 amendment to CWA regulations adopts this definition of "farmed wetland." *See* Clean Water Act Regulatory Programs (Final Rule), 58 Fed. Reg. 45,008, 45,031-45,034 (Aug. 25, 1993). Natural Prairie seems to recognize this error in reply and pivots to utilize the definition from 7 C.F.R. § 12.2 to argue the complaint's insufficiency.

A refocused Natural Prairie parses the complaint too thinly. A "wetland" predominantly has hydric soils, *see* 7 C.F.R. § 12.2(a); *see also Wetlands Delineation Manual* [R. 124-25]—a fact that the associations plausibly allege in their complaint based on soil testing [ECF 1 ¶ 74]. A "wetland" must also be "inundated or saturated by surface or groundwater at a frequency and duration sufficient to

---

[1] This manual, referenced specifically in the complaint, may be considered on this motion to dismiss. *See* Fed. R. Civ. P. 10(c); *Geinosky v. City of Chic.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions," 33 C.F.R. § 328.3(b) (1993); 7 C.F.R. § 12.2(a)—likewise a fact that the associations plausibly allege based on the site's "high water table" and "frequent ponding and flooding" [ECF 1 ¶¶ 73, 77; *see also* ¶ 107]. A "wetland" must also, under normal circumstances, support a prevalence of hydrophytic vegetation, *see* 7 C.F.R. § 12.2(a)—and again the complaint alleges that, based on all natural conditions and indicators, hydrophytic plants would return if cropping ceased [ECF 1 ¶ 77].

The complaint goes on to allege specific facts vis-à-vis the definition of "farmed wetland." *See* 7 C.F.R. § 12.2(a)(4) (under "wetland determination"). For instance, the associations plead that "hydrological and soil conditions" at the farm "confirm[] the presence of jurisdictional wetlands and farmed wetlands" [ECF 1 ¶ 11]. They allege that the site "has areas that are inundated for at least 15 consecutive days or 10 [percent] of the time during the growing season" [ECF 1 ¶ 76]—one of the hydrologic criteria under the regulatory definition. In addition to saturation, the primary wetland hydrology indicator, they also allege the existence of seasonally inundated hydric soils [ECF 1 ¶ 74], a high water table perched at or near the surface [ECF ¶ 73], and topographical maps indicating a low elevation [ECF 1 ¶ 75], all factors supporting the specific allegation of inundation. *See* 7 C.F.R. §§ 12.2(a)(4)(i)(A)-(B); United States Department of Agriculture Indiana Natural Resources Conservation Service, *Guidance for Indiana Wetland Determinations, Including the Use of Offsite Methods* 6 & 12 (incorporating the Corps' 1987 Wetland Manual by reference and its methodology), 16-17 (wetland indicators include soil surveys, surface water levels, saturated conditions, and elevation assessments), 19-25 (direct observation of wetland hydrology is demonstrated by "the presence of groundwater or perched water at or near the surface of the soil profile within a depth of 12 inches from the soil surface during any time in the growing season") (2018); *see also Wetlands Delineation Manual* [R. 144-149] (elevation, water table height, soil makeup, and soil saturation all influence wetland hydrology).

4

In short, the associations plausibly state a CWA claim. *See Iqbal*, 556 U.S. at 678. The complaint specifically alleges various hydrological, soil, and other environmental factors suggesting the existence of farmed wetlands existing after 1985 when the CWA was enacted. The complaint also alleges that the wetlands are adjacent to jurisdictional waters, have a continuous surface connection or unbroken hydrological connection to jurisdictional waters, or have a significant nexus with jurisdictional waters [ECF 1 ¶¶ 7, 78, 141]. *See Rapanos*, 547 U.S. at 742 and 780 (setting forth bright-line rule and significant nexus test); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724-25 (7th Cir. 2006). This conclusion remains though the Corps may have determined that no wetland existed, else the agency's finding would render judicial review impotent. The court must deny the motion to dismiss.

Natural Prairie alternatively moves to strike all reference to wetlands in the complaint. Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The court may either strike on its own or on a motion by a party and has considerable discretion" to strike such material. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141-42 (7th Cir. 2009). Because these allegations pertain to the CWA claim, the court denies the motion to strike.

The associations request the court to strike certain pages and arguments in Natural Prairie's briefing. The court declines but cautions counsel that attributing improper uses of the judicial system to other parties and counsel strays from effective advocacy, merely delays ruling, and risks something worse. The court encourages all parties to state their arguments concisely.

## CONCLUSION

Accordingly, the court DENIES Natural Prairie's motion to dismiss [ECF 22].

SO ORDERED.

September 29, 2021  *s/ Damon R. Leichty*
                                                                Judge, United States District Court