UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| HOOSIER ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:19-CV-00071 |
| NATURAL PRAIRIE INDIANA FARMLAND HOLDINGS, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL
SUMMARY JUDGMENT THAT NATURAL PRAIRIE'S UNPERMITTED FILLING OF
BOGUS ISLAND DITCH VIOLATES THE CLEAN WATER ACT**

I.      **Introduction**

Natural Prairie's opposition to Plaintiffs' Motion for Partial Summary Judgment hinges on

challenging the factual underpinnings and legal effect of the Army Corps' approved jurisdictional

determination ("AJD") that Bogus Island Ditch is a Waters of the U.S. (the "Bogus Island WOTUS

determination"). [DE 109 at 8 (arguing that "a genuine issue of material fact remains whether the

ditch Natural Prairie allegedly filled is a jurisdictional water"); at 11 (asserting that "the Corps'

Bogus Island WOTUS determination is [not] the law of the case" because "the Court vacated and

remanded . . . the entire AJD").] There are six fatal problems with Natural Prairie's approach.

First, the Army Corps' Bogus Island WOTUS determination was not vacated or remanded

by this Court's prior ruling. Rather, the Court's decision is limited to finding arbitrary and

capricious the specific AJD determinations challenged by Plaintiffs regarding wetlands and the

lateral ditches that Natural Prairie filled. *Hoosier Env't Council v. Nat. Prairie Indiana Farmland

Holdings, LLC*, 564 F. Supp. 3d 683 (N.D. Ind. 2021) ("*Hoosier I*"). The fact that the Court limited

its ruling in this way is not unusual and, indeed, the Administrative Procedures Act ("APA") expressly allows it. 5 U.S.C. § 706(2)(C); § 551(13).

Second, the Army Corps' Bogus Island WOTUS determination is a final agency action that can only be challenged—on factual or legal grounds—by following the applicable APA procedures for administrative and judicial review of final agency actions; none of which were followed by Natural Prairie here. As such, Natural Prairie's attempt to manufacture a genuine fact issue by challenging the Bogus Island WOTUS determination for the first time in this CWA citizen suit amounts to an improper collateral attack on a final agency decision. If allowed, the tactic would serve as an end run around the procedural limitations of APA judicial review including the threshold requirement—for Natural Prairie—to exhaust administrative remedies. *Hoosier I,* 564 F. Supp. 3d at 703 (citing 33 C.F.R. § 331.12).

The third fatal flaw with Natural Prairie's end run around APA review is that, by its own actions and admissions in seeking the AJD and during the APA portion of this case, Natural Prairie has waived any argument that Bogus Island Ditch, including the portion Natural Prairie filled, is not a WOTUS. Indeed, at every stage up to this point, Natural Prairie has vigorously defended all aspects of the Army Corps' AJD and represented to the Court that the agency had all the data and information it needed to issue the AJD, including to support the Bogus Island WOTUS determination. [DE 67 at 4-9, 14] Most critically, in briefing Plaintiffs' APA claim, Natural Prairie acknowledged Plaintiffs' position that the Army Corps had correctly determined that both Lawler and Bogus Island ditches are WOTUS and, therefore, Plaintiffs were not challenging those determinations. [DE 67 at 2] Even so, Natural Prairie failed to lodge any disagreement with, much less advance a counterargument to, Plaintiffs' position. Under Seventh Circuit precedent, Natural Prairie's conduct constitutes a waiver and concession of the point.

Fourth, Natural Prairie supports its collateral attack on the Bogus Island WOTUS determination with the opinions of its retained experts, but those opinions were not provided to the Army Corps when Natural Prairie requested the AJD. Consequently, even if this issue were properly before the Court on APA judicial review, Natural Prairie is asking the Court to impermissibly conduct a *de novo* review of the Bogus Island WOTUS determination based on evidence that is not part of the agency's record. The impropriety of doing so is underscored by Natural Prairie's own explanation of the limited standard of review under the APA. [DE 67 at 2-3, 16 (noting that for Plaintiffs to "prevail under the APA, the Corps' decision must have been counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" and that Plaintiffs were attempting to impermissibly create "a battle between the Plaintiffs' expert and the Corps' expertise")] Natural Prairie should not be allowed to play by a different set of rules now.

A fifth fatal infirmity with Natural Prairie's end run around APA review is that it does not create a *genuine* issue of *material* fact as to whether Bogus Island Ditch is a WOTUS. Even if the opinions of Natural Prairie's retained experts create a fact issue on this point, the question is not *material* for all the reasons discussed above—*i.e.,* the issue has already been settled as a matter of law, this issue is not properly before the Court, Natural Prairie conceded and waived the argument, and Natural Prairie is asking the Court to conduct an improper *de novo* review of the Corps' WOTUS determination based on extra-record evidence. The opinions of Natural Prairie's retained experts likewise do not create a *genuine* fact dispute because those opinions are contrary to the overwhelming body of evidence in this case that all came from Natural Prairie, its consultants, and involved government agencies—not the Plaintiffs. For instance, Natural Prairie's trial experts now for the first time say that the filled portion of Bogus Island Ditch is not the headwaters of Bogus

Island ditch but a separate ditch entirely; this is an opinion that Natural Prairie concedes is counter to what "this Court, the Corps, and even Natural Prairie's own consultants" have concluded and that is counter to Natural Prairie's own statements. [DE 109 at 13; *see also* DE 67 at 6-7 (acknowledging in briefing Plaintiffs' APA claim that Natural Prairie had "clos[ed] and til[ed] . . . approximately 2,350 linear feet of Bogus Island Ditch" and providing aerial photos depicting "the closed portions of Bogus Island Ditch")]

Sixth and finally, by trying to defeat Plaintiffs' summary judgment motion through a collateral attack on the Army Corps' Bogus Island WOTUS determination, Natural Prairie has failed to address the pertinent legal questions at hand—that is, whether Natural Prairie's filling of nearly a half mile of Bogus Island Ditch to build its CAFO was an exempt activity that did not require a permit under Section 404(f)(1); and if it was exempt, whether the activity was nevertheless recaptured and subject to permitting under Section 404(f)(2). Because Natural Prairie has not demonstrated either of these things, summary judgment is warranted in Plaintiffs' favor.

For all of these reasons, discussed in more detail below, the Court should reject Natural Prairie's collateral attack on the Bogus Island WOTUS determination and grant Plaintiffs' motion for partial summary judgment that Natural Prairie's unpermitted filling of Bogus Island Ditch is an ongoing violation of the CWA.

## II. The Army Corps' Bogus Island WOTUS Determination Was Not Vacated or Remanded by This Court's Prior Ruling in *Hoosier I*.

Natural Prairie insists that the Court can ignore the Army Corps' Bogus Island WOTUS determination because, in Natural Prairie's view, it was "vacated and remanded" along with the "entire AJD" by this Court's prior ruling in *Hoosier I*. [DE 109 at 11 (Natural Prairie stating further that "the entire AJD is now void and without legal effect")] Natural Prairie is wrong.

As an initial matter, this Court in *Hoosier I* expressly limited its holding and remand to the portions of the AJD that were challenged by Plaintiffs in their APA claim. Starting at the outset of the opinion, the Court identifies those two challenged jurisdictional decisions:

> As alleged, without informing the government, Natural Prairie filled nearly half a mile of the Bogus Island Ditch and installed drainage 'tiles,' or underground pipes used to drain excess water from the soil. Natural Prairie filled and tiled various lateral ditches attached or near to the Lawler and Bogus Island Ditches. After these alterations, Natural Prairie contacted the Army Corps of Engineers to determine if the ditches, lateral ditches, and the land was subject to federal regulation. After a site visit, the Corps concluded the land was not a jurisdictional wetland, and that only the Lawler and Bogus Island Ditches were jurisdictional waters and under its regulatory control. . . In July 2019, [Plaintiffs] sued the Corps . . . [u]nder the Administrative Procedures Act (APA), . . . seek[ing] judicial review of the Corps' determination that the land is not a wetland and the lateral ditches are not jurisdictional waters.

*Hoosier I,* 564 F. Supp. 3d at 696-97, 704. The Court then focused its analysis on those two challenged decisions and held that they were both arbitrary, capricious, and should be remanded. *Id* at 705-18.[1]

As to the Army Corps' no wetland determination, the Court concluded that remand was required on the issue "so that the agency may issue a decision that complies with its procedural requirements." *Id.* at 714. In turn, the Court held that the "agency's conclusion that the lateral ditches were not waters of the United States must be remanded so that the Corps may reassess its decision in light of its wetland findings and follow its guidance." *Id.* at 718. Nowhere in the opinion does the Court say or imply that the Army Corps' Bogus Island WOTUS determination should also be remanded. Nor does the opinion make any mention of the Bogus Island WOTUS determination being in dispute, because it was not. Instead, the Court repeatedly affirmed that the

---

[1] The Court also addressed and rejected Natural Prairie's claims that Plaintiffs lacked standing and were required to exhaust administrative remedies. *Id.* at 698-704.

Corps had determined that "Lawler and Bogus Island Ditches were jurisdictional waters and under its regulatory control" and "are waterbodies of the United States." *Id.* at 696, 716.

For that matter, the Court's ultimate ruling plainly does not apply to the Bogus Island WOTUS determination. Rather, the Court concludes that the Army Corps' "jurisdictional decision . . . *that most* of the dairy farm was not subject to the Clean Water Act was arbitrary and capricious" and, therefore, that decision is remanded "to the Corps for reconsideration of its jurisdiction over Natural Prairie's land *consistent with this opinion." Id.* at 719 (emphasis added). Natural Prairie's contention otherwise—that the *entire* AJD was somehow vacated and remanded by the Court's ruling—is directly and expressly contradicted by the Court's statements.

Moreover, Natural Prairie's contention that the Court's prior ruling should be construed to have thrown out the entire AJD has no foundation in the law. The APA unambiguously allows a reviewing court to set aside portions of an agency action as this Court did in *Hoosier I.* Indeed, the APA's standard of review directs a reviewing court to "hold unlawful and set aside *agency action, findings, and conclusions* found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence . . ." 5 U.S.C. § 706(2)(A), (E) (emphasis added). In turn, an "*agency action*" is defined to include "the whole *or a part* of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (emphasis added).

Under these APA provisions, federal courts from around the country have issued orders, like the Court did here, that set aside only the portions of an agency action deemed unlawful. *See e.g., Orangeburg, S.C. v. FERC*, 862 F.3d 1071, 1087 (D.C. Cir. 2017) (vacating *portions* of a FERC JDA Approval Order); *United Food & Com. Workers Union, Loc. No. 663 v. United States Dep't of Agric.*, No. 19-CV-2660 (JNE/TNL), 2021 WL 2010779, *1 (D. Minn. May 20, 2021)

(vacating *part* of a challenged action of the USDA); *N. New Mexico Stockman's Ass'n v. United States Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1040-44 (D.N.M. 2020) (confirming courts may vacate parts of agency decisions). Natural Prairie's contention otherwise is baseless—the Corps' Bogus Island WOTUS determination still stands.

III.   **Natural Prairie's Challenge to the Bogus Island WOTUS Determination Amounts to an Improper Collateral Attack on a Final Agency Decision and Attempts an End Run Around the Limitations of APA Judicial Review as well as the Requirement to Exhaust Administrative Remedies.**

Natural Prairie attempts to manufacture a fact issue to defeat Plaintiffs' summary judgment motion by arguing for the first time that the Army Corps' Bogus Island WOTUS determination is wrong. [DE 109 at 8 (asserting that "a genuine issue of material fact remains regarding whether the ditch Natural Prairie allegedly filled was a jurisdictional water"); at 13 (asserting that the Army Corps incorrectly refers to the ditch Natural Prairie filled as "the headwaters of Bogus Island Ditch"), at 15-16 (arguing that the evidence relied on by the Corps in support of the Bogus Island WOTUS determination includes an "unreliable" USGS topographic map and aerial photos that "are of limited value")] The Court should reject and strike Natural Prairie's tactic as an improper collateral attack on the Bogus Island WOTUS determination and an end run around the substantive and procedural limitations imposed by APA judicial review.

As this Court observed in *Hoosier I,* the Army Corps' AJD is a final agency action subject to APA review. 564 F. Supp. 3d at 703 (citing 33 C.F.R. § 320.1(a)(6)). Yet to date, Natural Prairie has failed to challenge the AJD's designation of Bogus Island Ditch as a WOTUS in an APA appeal (*infra* at 12), which is the proper procedural path for such challenges, *see* 5 U.S.C. §§ 701-706, (and the path taken by Plaintiffs). Thus, allowing Natural Prairie's collateral attack on the AJD to proceed in this citizen suit would allow Natural Prairie to bypass the APA's deferential

judicial review standard and procedural requirements including the requirement, for Natural Prairie, to exhaust administrative remedies.

Indeed, the APA's standard of review requires the Court to evaluate the Corps' AJD based on a fixed administrative record (in most circumstances) and requires the Court to give deference to the agency's decision, among other limitations—just as the Court did in *Hoosier I*. 564 F. Supp. 3d at 705 (explaining that "[a] court's scope of review is 'narrow and a court must not substitute its judgment for that of the agency'").

In fact, Natural Prairie itself warned in its APA response brief that the Court should not "turn a blind eye to the substantial deference routinely afforded to an executive agency Congress specifically designated to carry out a federal legislative program." [DE 67 at 3] Natural Prairie also cautioned that, "[t]he Supreme Court has made clear that on review of an administrative judgment on a basic matter entrusted by law to an administrative agency, a court of appeals is not generally empowered to conduct a de novo inquiry into the matter and to reach its own conclusions based on such an inquiry." [DE 67 at 10-11]. Yet, this is exactly what Natural Prairie is now inviting the Court to do. *See infra* at Section V.

The Court should decline Natural Prairie's invitation. *Cf. Greenpeace, Inc. v. Waste Techs. Indus.*, 9 F.3d 1174, 1178, 1181 (6th Cir. 1993) (citizen-suit provision does not confer district court jurisdiction over collateral challenges to prior permitting decisions; doing so would render permit appeal procedures and underlying policies meaningless); *Grand Canyon Tr. v. Pub. Serv. Co. of New Mexico*, 283 F. Supp. 2d 1249, 1253 (D.N.M. 2003) (the court may not allow a plaintiff "to circumvent the limited review process established by Congress, by entertaining [plaintiff's] claim that [defendant] should have obtained . . . permits despite EPA's decision to the contrary").

The Court should also reject and strike Natural Prairie's collateral attack because it would bypass the Army Corps' administrative appeals process at 33 C.F.R. Part 331, which "*must* be exhausted" by an "affected party" before seeking review in federal court. 33 C.F.R. § 320.1(a)(2). In *Hoosier I,* this Court confirmed that Natural Prairie is the "affected party" here and bound by the Army Corps' administrative exhaustion requirement. *Id.* at 703-04. Nevertheless, Natural Prairie now challenges the Bogus Island WOTUS determination having never before even disagreed with it, much less pursued an administrative appeal of the decision. *Infra* at Section IV.

Allowing Natural Prairie to flout the Army Corps' administrative process would defy the reasons parties are required to exhaust administrative remedies in the first place:

> Exhaustion of administrative remedies serves two main purposes. First, [it] protects administrative agency authority. . . by giv[ing] an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the [agency] proceedings . . . convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion . . . may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal quotation and citation omitted).

Natural Prairie's failure to exhaust administrative remedies also means this Court lacks jurisdiction to consider Natural Prairie's collateral attack. *See e.g., Agua Caliente of Cupeño Indians v. Sweeney*, 932 F.3d 1207, 1216-19 (9th Cir. 2019) (district court lacked jurisdiction to consider challenge of a Department of Interior decision because plaintiffs failed to exhaust administrative remedies); *Koretoff v. Vilsack*, 601 F. Supp. 2d 238, 241-44 (D.D.C. 2009) (challenge to USDA regulation dismissed for lack of subject matter jurisdiction because the plaintiffs failed to exhaust administrative remedies); *Montanans For Multiple Use v. Barbouletos*,

542 F. Supp. 2d 9, 11 (D.D.C. 2008) (plaintiffs barred from seeking judicial review of a U.S. Forest Service decision for failure to exhaust administrative remedies). For all these reasons, the Court should bar Natural Prairie's attempt to end run around the limits of APA review.

**IV.     Natural Prairie Has Conceded that the Bogus Island WOTUS Determination Is Correct, or at Least Has Waived the Argument that the Determination Is Incorrect.**

In waging its collateral attack on the Bogus Island WOTUS determination, Natural Prairie points to the opinions of its retained trial experts to claim, contrary to the Corps' findings, that the filled portion of Bogus Island Ditch is a separate ditch that did not have "relatively permanent flow." [DE 109 at 13] A critical problem with this attack is that Natural Prairie has never before made this argument—not to the Army Corps, and not to this Court—despite having all the same evidence in its possession that its experts now rely on for their opinions. Natural Prairie has thus conceded and waived this argument by its previous actions and admissions.

Starting on July 19, 2018, the Army Corps inspected Natural Prairie's property (i.e., the "CAFO Site"),[2] and made the following observation in the presence of Natural Prairie's agents:

> There are also two large drainage ditches, one along the west side of the property (Lawler Ditch) and one toward the middle of the property (Bogus Island Ditch). I explained to Will and Mike, both the Lawler and Bogus Island Ditches are jurisdictional waters. If there are any plans to discharge fill into either, a permit would likely be necessary from the Army COE.

---

[2] Natural Prairie confirms that in February of 2016, it purchased "approximately 3,000 acres" of farmland including the "approximately 800 acre" parcel where the CAFO was built that is located in "McClellan Township, Section 8, Township 30 N, Range 9 West." [DE 107 at 2, 5] In referring to this 800-acre parcel and the CAFO it built there, Natural Prairie interchangeably uses the terms "Farm" and "Dairy." [*See e.g.,* DE 107 at 9-11 (admitting that it received a zoning "special exception to operate its *dairy*," while also admitting that it applied for and received IDEM permits for its "Confined Feeding Operation" and for "manag[ing] stormwater run-off at the *Farm*" (emphasis added)] Since Plaintiffs' CWA claims are focused only on the 800-acre parcel where the CAFO now stands, Plaintiffs will refer to that parcel as the "CAFO Site" to avoid confusion.

[DE 28 at 77] Notably, Natural Prairie did not mention or provide the Army Corps' inspector with the ditch survey measurements that Natural Prairie took in August 2016 prior to filling Bogus Island Ditch. But now, for the first time, Natural Prairie argues that those same ditch survey measurements it had in its possession since 2016 "*clearly establish*" that the filled portion of the ditch flowed in the opposite direction and "had, at best, ephemeral flow." [DE 107 at 23-24] In other words, at the time of the Corps' inspection Natural Prairie possessed the measurements that Natural Prairie now claims contradicts the Corps' statements regarding Bogus Island Ditch, but Natural Prairie failed or declined to present those measurements to the Corps.

A month later, on August 28, 2018, when the Army Corps issued its AJD concluding that Bogus Island Ditch is a WOTUS [DE 28 at 438-439], the agency described the evidence it considered in reaching that determination:

> Bogus Island Ditch is depicted on the USGS 1:24000 topo map a blue line stream which indicates a relatively permanent flow. The USDA-NRCS Soil Survey for Newton County also indicates the presence of Bogus Island Ditch by mapping it as a stream/canal. The NHD map also shows that flow in Bogus Island Ditch is relatively permanent. Water is evident in Bogus Island Ditch in aerials reviewed from the following years: 1939, 1952, 1963 and Google Earth images taken in April 1998, February 2005, June 2008, September 2013, May 2015, and April 2017. Water was observed flowing in Bogus Island Ditch during the July 19, 2018 site visit and it has a defined bed and bank. In addition to the observed water flow other OHWM indicators described in RGL 05-05 were observed such as a line impressed on the bank, shelving, etc… Bogus Island Ditch is also a county regulated drain. The Indiana Drainage Handbook defines a regulated drain that is called a ditch as having permanent or intermittent flow.

[DE 28 at 439][3]  Having determined that Bogus Island Ditch is a WOTUS, the Army Corps then advised Natural Prairie that discharging dredge or fill material into the ditch would require "authorization from the Corps." [DE 28 at 428] The agency also advised that if Natural Prairie

_____

[3] This belies Natural Prairie's assertion that just "one USGS topographic map" is the reason "this Court, the Corps, and even Natural Prairie's own consultants" have, in Natural Prairie's view, mistakenly referred to the filled section of Bogus Island Ditch as its "headwaters." [DE 109 at 13]

objected to the AJD, it had 60 days, by October 29, 2018, to administratively appeal under 33 C.F.R., Part 331, otherwise the AJD would be "valid for a period of five years." [DE 28 at 429] Natural Prairie did not appeal the AJD, and nothing in the record shows Natural Prairie lodged any disagreement with the Corps on the matter of Bogus Island Ditch.

Instead, on September 17, 2018, Natural Prairie asked Army Corps whether a permit was needed for its admitted "enclosure" of "approximately 2500' of the northern section of the ditch" that Natural Prairie referred to as "Bogus Island ditch." [DE 28 at 458] In response, the Army Corps directed Natural Prairie to send "an email outlining the work that was done" including "plans or aerials depicting the section of the ditch that was enclosed" and "information concerning the characteristics of the ditch . . . to get some idea of what the ditch looked like prior to being enclosed." [DE 28 at 458]

In response, Natural Prairie *again* did not provide the Corps with the August 2016 ditch survey measurements that its experts now insist "clearly establish" that the ditch Natural Prairie filled was not really Bogus Island Ditch. [DE 107 at 23] Instead, Natural Prairie admitted that it had "enclosed" a ditch that it referred to as "Bogus Island Ditch," and provided the Army Corps with details about the enclosure in the following email that Natural Prairie entitled, "Bogus Island Closing:"

[T]he width [was] 25' from top of ditch bank to top of ditch bank. . .

*Distance Closed: 2,350 linear feet

*Ditch Detail: similar characteristics to that observed on July 19th, 2018 USACE visit except for the originating 300 feet – much more narrow, less deep, and no water present

*Reason Closed: Crop reasons, we do now intend to place part of a dairy farm building over the top of a portion of the closed ditch.

*Tile Line Present: 12" tile line parallel to former ditch bank

[DE 28 at 455] Natural Prairie also attached the following aerial photos to that email, again identifying in the caption that the ditch it filled is "Bogus Island Ditch"—not some separate ditch:

<div style="writing-mode: vertical">USDC IN/ND case 4:19-cv-00071-TLS-JEM   document 28   filed 10/07/19   pag</div>





[DE 28 at 456-457]

The next day, on September 18, 2018, Army Corps forwarded this information to IDEM and cc'd Natural Prairie in the following email confirming Natural Prairie's admission that it had filled "about 2500' of Bogus Island Ditch" and its understanding that the Corps had determined that this section of the ditch was also jurisdictional:

> Below and attached is information about potential unauthorized work that occurred on property owned by Natural Prairie Indiana Farmland Holdings. The property is located at 4500 West 400 North near Lake Village in Newton County. *We did a jurisdictional determination in July and sent a letter on August 28, 2018 and you were copied on it. . . We determined that two ditches, Bogus Island and Lawler Ditch, were jurisdictional. About 2500' of Bogus Island Ditch has been tiled and enclosed. Information is included in this email and attached that outlines the work that occurred and was provided by the applicant and his agent. This likely going to require an after the fact permit* so I wanted to get this information to you so that we determine next steps.

[DE 28 at 459 (emphasis added)]

On October 16, 2018, Natural Prairie followed up with the Army Corps and IDEM "to see if any additional information [was] needed," to which the Army Corps' inspector replied that he was "in Florida dealing with Hurricane Michael recovery" and would "not be back in the office until mid-November." [DE 28 at 459, 461] The inspector added, "I know this is not the answer you were looking for, so I apologize for that." [DE 28 at 461]

At no point in these communications with the Army Corps did Natural Prairie raise any disagreement with the Corps' reference to the filled ditch as Bogus Island Ditch or with the Corps' Bogus Island WOTUS determination. Nor did Natural Prairie provide the evidence *it had in its possession at the time* that its experts now insist so "clearly establish" their novel view that the ditch Natural Prairie filled was not Bogus Island Ditch at all. [DE 107 at 23-24] Not only that, but after the 60-day window for administratively appealing the AJD had passed, Natural Prairie continued to accept the Army Corps' Bogus Island WOTUS determination and its application to the portion of Bogus Island Ditch that Natural Prairie filled.

More generally, at no point in applying for the AJD or in Natural Prairie's post-AJD communications with the Army Corps did Natural Prairie lodge any disagreement, raise any argument, provide any evidence, or indicate in any way to the Army Corps that Natural Prairie disputed the Bogus Island WOTUS determination. And that acceptance has continued on at every stage of the proceedings before this Court—until now. Indeed, Natural Prairie has vigorously defended all aspects of the Army Corps' AJD and represented to the Court that the agency had all the data and information it needed and had "performed a thorough review prior to issuing its AJD," including the data and information to support the Bogus Island WOTUS determination. [DE 67 at 4-9, 14]

Critically, in briefing Plaintiffs' APA claim, Natural Prairie acknowledged Plaintiffs' position that the Army Corps had correctly determined that both Lawler and Bogus Island ditches are WOTUS and, therefore, Plaintiffs were not challenging those determinations. [DE 67 at 10 (stating, "[t]he AJD finds jurisdiction over certain portions of Natural Prairie's property" and "Plaintiffs agree with this outcome.")] Yet Natural Prairie failed to lodge any disagreement with, much less advance a counterargument to, Plaintiffs' position.

Under Seventh Circuit precedent, Natural Prairie's failure in this regard constitutes a waiver and concession of the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument ... results in waiver," and "silence leaves us to conclude" a concession); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) (where a party "fails to respond to the [opposing party's] argument in a Reply Brief, ... we find that [the party] waived" any counterargument); *Myers v. Thoman*, 2010 WL 3944654, at *4, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made ... concedes those points."); *Cintora v. Downey*, 2010 WL

786014, at \*4, 2010 U.S. Dist. LEXIS 19763, at \*12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession.")

In sum, the Court should not allow Natural Prairie to proceed with its collateral attack on the Bogus Island WOTUS determination because Natural Prairie has conceded and waived the argument.

## V. Natural Prairie Is Asking the Court to Impermissibly Conduct a De Novo Review of the Bogus Island WOTUS Determination Based on Evidence that is Not Part of the Army Corps' Administrative Record.

In briefing Plaintiffs' APA claim, Natural Prairie observed correctly that a court on review of an agency action is "generally [not] empowered to conduct a de novo inquiry into the matter." [DE 67 at 10-11] Natural Prairie also rightly acknowledged the "bedrock rule of administrative law that a court should not make a new record in order to evaluate agency actions." [DE 65 at 2-3] Instead, the proper "focus of judicial review is not on the wisdom of the agency's decision or the winner in the battle of the experts but rather on the agency's decision making process. [Thus,] to prevail under the APA, the Corps' decision must have been counter to the evidence before the agency or so implausible that it could not be ascribed to a difference in view or the product of agency expertise." [DE 67 at 16 (internal quotation and citation omitted)]

Expediently ignoring these principles now, Natural Prairie wants this Court to conduct a *de novo* review and second-guess the Army Corps' Bogus Island WOTUS determination based on evidence that was not before the agency. For instance, Natural Prairie disagrees with "this Court, the Corps, and even Natural Prairie's own consultants" who have all concluded that Bogus Island Ditch "sits on Natural Prairie's land," including the filled "headwaters of Bogus Island Ditch." [DE 107 at 7; DE 109 at 13] According to Natural Prairie, however, the Army Corps (and everyone

else) got this wrong based on "one [incorrect] USGS topographic map," while other evidence that is not part of the Army Corps' record purportedly shows—in Natural Prairie's view—that the filled section of the Ditch is not the headwaters or even part of Bogus Island Ditch. [DE 107 at 7; DE 109 at 13]

The first problem with this is that the Army Corps reviewed more than just one topographic map in making its Bogus Island WOTUS determination. The agency also considered the USDA-NRCS Soil Survey for Newton County, the NHD map, aerial photos going back to 1939, observations from a site visit, and the Indiana Drainage Handbook. [DE 28 at 439] Yet Natural Prairie makes no attempt to demonstrate that this considered evidence was so deficient or so contrary to the Army Corps' Bogus Island WOTUS determination as to render the decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Stated differently, even if Natural Prairie's collateral attack on the Corps' Bogus Island WOTUS determination was properly before the Court—which it is not—Natural Prairie has not met its burden of demonstrating that the agency's decision was "arbitrary, capricious, an abuse of discretion," or "*unsupported by substantial evidence . . .*" 5 U.S.C. § 706(2)(A), (E) (emphasis added).

The second problem is that Natural Prairie's disagreement with the Army Corps is based on the contradictory opinions of Natural Prairie's trial experts, the August 2016 ditch survey measurements,[4] and a March 2019 letter from the Newton County Surveyor [DE 107 at 7-8, 23;

---

[4] As discussed above, Natural Prairie's trial expert claims that the August 2016 ditch survey measurements "clearly establish" that the filled portion of the ditch "flow[ed] *away from* (not towards) the Bogus Island Ditch." [DE 107 at 23 (emphasis in original)] One wonders why Natural Prairie never provided these measurements to the Army Corps even though they had been in Natural Prairie's possession for nearly two years. It is also curious that not one of Natural Prairie's environmental consultants (or lawyers) involved in assisting Natural Prairie through the AJD process ever noticed what the 2016 ditch survey measurements purportedly establish so "clearly."

DE 109 at 13-15], none of which are part of the Army Corps' record. Thus, even if Natural Prairie had properly sought review of the Bogus Island WOTUS determination, this extra-record evidence could not be considered by the Court. Indeed, the impropriety of doing so is made clear by Natural Prairie's own prior words:

> District Courts in the Seventh Circuit have repeatedly recognized . . . that in all but exceptional cases, this review is limited to the administrative record already in existence. This principle was applied in this district . . . where this Court rejected the plaintiff's motion to supplement the administrative record through expert testimony . . . This Court rejected the request noting that the focus of judicial review is not on the wisdom of the agency's decision or the winner in the battle of the experts but rather on the agency's decision making process. It then noted that the plaintiff's proffered expert testimony actually led the court away from that inquiry. The same is true with the Plaintiffs' extra-record material in this case. It focuses not on what the Army Corps did in reaching its decision, but rather on what the agency should have considered. Put differently, Plaintiffs' evidence does nothing to address potential flaws in the agency's decision-making *process*; instead, it attacks the agency's *decision* itself.

[DE 65 at 3 (emphasis in original, internal quotation and citation omitted)] Natural Prairie should not be allowed to play by a different set of rules when it suits its purposes.

## VI.    Even if Properly Before the Court, Natural Prairie's Collateral Attack Does Not Create a Genuine Issue of Material Fact As to Whether Bogus Island Ditch Is a WOTUS.

Another problem with Natural Prairie's attempted end run around APA review is that it does not create a *genuine* issue of *material* fact as to whether Bogus Island Ditch is a WOTUS. As discussed in Plaintiffs' initial supporting Memorandum, "a fact is not *material* unless it may affect the outcome of the suit under governing law." [DE 99 at 14 (internal quotation and citation omitted)] Accordingly, even if the opinions of Natural Prairie's experts created a fact dispute as to whether the Army Corps' Bogus Island WOTUS determination is correct, the evidence is not *material* under governing law for all the reasons discussed above—*i.e.*, the issue has already been settled as a matter of law, this issue is not properly before the Court, Natural Prairie conceded and

waived the argument, and Natural Prairie is asking the Court to conduct an improper *de novo* review of the Corps' WOTUS determination based on extra-record evidence.

In turn, Natural Prairie's collateral attack on the Bogus Island WOTUS determination does not create a *genuine* issue of fact. A fact dispute is not *genuine* unless the dispute has "a real basis in the record" that could lead "a reasonable jury . . . [to] return a verdict for the non-movant." *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996) (emphasis added). "The mere existence of some alleged factual dispute . . . is insufficient to defeat a motion for summary judgment." *Fairchild v. Forma Sci.,* 147 F.3d 567, 571 (7th Cir. 1998).

Here, Natural Prairie's trial experts now say that the filled portion of Bogus Island Ditch is not the headwaters of Bogus Island Ditch, while Natural Prairie's own documents and statements to this Court conclusively prove otherwise. *See supra* at 10-14; *see also* [DE 67 at 6-7 (acknowledging in its APA brief to the Court that Natural Prairie had "clos[ed] and til[ed] . . . approximately 2,350 linear feet of Bogus Island Ditch" and providing aerial photos depicting "the closed portions of Bogus Island Ditch")] For that matter, Natural Prairie concedes that their expert's opinion is counter to what "this Court, the Corps, and even Natural Prairie's own consultants" have concluded. [DE 109 at 13]

There is also no genuine dispute that Bogus Island Ditch is a drainage ditch and a WOTUS. As detailed above, the Army Corps has already determined that Bogus Island Ditch is a WOTUS as a matter of law. And Natural Prairie's own documents and admissions prove that Bogus Island Ditch, including the filled headwaters, is/was a drainage ditch [DE 99 at 9-12]; a fact also confirmed by this Court in *Hoosier I.* 564 F. Supp 3d at 696 (noting that Bogus Island Ditch is a drainage ditch constructed long ago to drain Beaver Lake by "mov[ing] water from the lake to the

nearby Kankakee River"). While Natural Prairie disagrees with the *legal significance* of this evidence, it does not dispute the evidence itself.

For example, Natural Prairie does not deny the fact that its "Rule 5 Stormwater Plan refers to all of the ditches on site as 'drainage' ditches that convey stormwater after the surface water 'infiltrates through the soil profile' to groundwater, which is then 'removed to nearby drainage ditches through the presence of both artificial drainage tile and natural subsurface drainage.'" [DE 107 at 33] Instead, Natural Prairie "disputes that its 'New Dairy Construction: Rule 5 Stormwater Run-Off Control Plan' makes any *concession* that the non-navigable ditches at the Farm are 'drainage' ditches *for purposes of the CWA*." [DE 107 at 33-34 (emphasis added)] This is a legal argument, not a fact dispute, much less a *genuine* one.

## VII. Natural Prairie Has Failed to Address the Pertinent Question of Whether Its Filling of Bogus Island Ditch Was Exempt From Section 404 Permitting and Has Thus Waived or Conceded the Issue.

By trying to defeat Plaintiffs' summary judgment motion through a collateral attack on the Army Corps' Bogus Island WOTUS determination, Natural Prairie has failed to address the pertinent legal question—i.e., whether Natural Prairie's filling of nearly a half mile of Bogus Island Ditch to build its CAFO is exempt from CWA Section 404 permitting. This failure concedes and/or waives the issue, and Plaintiffs are thus entitled to summary judgment that Natural Prairie's filling of a portion of Bogus Island Ditch was not exempt and violates the CWA.

CWA law distinguishes between "exceptions" to WOTUS—i.e., waters that are excluded from the definition of WOTUS and thus not jurisdictional—and "exemptions" of waters, otherwise deemed jurisdictional WOTUS, from CWA 404 permitting requirements. Section 404(f)(1) of the CWA sets forth those "exempt" activities that do not require a Section 404 permit even when those

activities are conducted in jurisdictional "waters of the U.S." For example, activities exempt from CWA Section 404 permitting include the following:

• Discharge of dredged or fill material from "normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, [and] harvesting," 33 U.S.C. § 1344(f)(1)(A), so long as the activities are "part of an established (i.e., on-going) . . . operation" and are not conducted on an area that "has been converted to another use or has lain idle so long that modifications to the hydrological regime are necessary to resume operations," 33 C.F.R. § 323.4(a)(1)(ii).

• Discharge of dredged or fill material "for the purpose of construction or maintenance of . . . irrigation ditches, or the maintenance of drainage ditches," 33 U.S.C. § 1344(f)(1)(C), *see also* 33 C.F.R. § 323.4(a)(3), USACE, Regulatory Guidance Letter No. 07-02, 3–5 (July 4, 2007) [DE 28 at 470-476].

These exemptions do not apply, however, if the discharge is "incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section." 33 U.S.C. § 1344(f)(2) ("recapture provision"); *see also* 33 C.F.R. § 323.4(c). In other words, otherwise exempt activities listed in Section 404(f)(1) may still be subject to Section 404 permitting if the activity is recaptured under Section 404(f)(2).

As discussed in Section II above, the Army Corps has formally determined in its AJD that Bogus Island Ditch on the CAFO site is a WOTUS; this agency determination has never been appealed; and the Corps' Bogus Island WOTUS determination still stands after this Court's decision in *Hoosier I*. Given that the Corps' Bogus Island WOTUS determination is still legally

valid and binding on both Natural Prairie and the Corps, the only pertinent questions that remain regarding Bogus Island Ditch are whether Natural Prairie's filling of a portion of the ditch is an exempt activity under Section 404(f)(1) and if so whether the activity is recaptured under Section 404(f)(2).

Plaintiffs fully briefed these relevant issues in their initial summary judgment Memorandum. [DE 99 at 17-25] But Natural Prairie did not address them or even attempt to demonstrate that its activity is exempt from Section 404 permitting or not recaptured. Instead, Natural Prairie devotes almost the entirety of its response brief to collaterally attacking the Corps' Bogus Island WOTUS determination with arguments disputing whether the filled portion of Bogus Island Ditch had "relatively permanent flow" or a "significant nexus" to the Kankakee River. [*See* DE 109 at 3-19]

But as noted above, CWA law distinguishes between waters that are *excluded* from the definition of WOTUS and waters that are jurisdictional WOTUS but *exempt* from CWA 404 permitting requirements. The issues argued by Natural Prairie regarding the existence of "relatively permanent flow" and "significant nexus," go to the former question—i.e., whether a water is a jurisdictional WOTUS. *See e.g.,* [DE 99 at 5-6 (noting that CWA jurisdiction attaches to "non-navigable tributaries that are 'relatively permanent' . . ."); at 12 (arguing that "a party must establish that a ditch has a 'significant nexus' to a traditional navigable water in order to establish that the ditch is jurisdictional")] And that question has already been formally decided as to Bogus Island Ditch by the agency authorized to do so. So Natural Prairie's arguments on these points address the wrong question.

Under Seventh Circuit law, Natural Prairie's failure to argue that its ditch filling is exempt from or not recaptured by Section 404 permitting constitutes a concession, or at least a waiver, of

the issue. *See* Section IV above. Therefore, summary judgment is warranted in Plaintiffs' favor that the activity is not exempt and is a violation of Section 404.

**Conclusion:**

For the reasons detailed above and in Plaintiffs' initial Memorandum, Plaintiffs respectfully request this Court to grant partial summary judgment in Plaintiffs' favor on their claim that Natural Prairie unlawfully filled Bogus Island Ditch in violation of the Clean Water Act.

Dated: July 12, 2022

Respectfully submitted,

/s/ *Kim E. Ferraro*
Kim E. Ferraro (#27102-64)
Hoosier Environmental Council
3951 N. Meridian, Suite 100
Indianapolis, IN 46208
(317)-685-8800
kferraro@hecweb.org

/s/ *Jeffrey B. Hyman*
Jeffrey B. Hyman (#24625-89)
Conservation Law Center
116 South Indiana Avenue, Suite 4
Bloomington, IN 47408
jbhyman@indiana.edu

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2022 a copy of the foregoing document was filed electronically and served on the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Kim E. Ferraro

Daniel R. Dertke
Wayne T. Ault
U.S. Department of Justice
Envtl. & Natural Res. Def. Section
P.O. Box 7611
Washington, D.C. 20009

*Attorneys for U.S. Army Corps of Engineers*

Bradley R. Sugarman
Andrew M. McNeil
Daniel P. McInerny
Seth M. Thomas
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 Fax

*Attorneys for Defendant, Natural Prairie Indiana Farmland Holdings, LLC*