UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| HOOSIER ENVIRONMENTAL COUNCIL *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NATURAL PRAIRIE INDIANA FARMLAND HOLDINGS, LLC *et al.*,<br><br>　　　　Defendants. | CAUSE NO. 4:19-CV-71 DRL |

OPINION AND ORDER

Natural Prairie Indiana Farmland Holdings, LLC purchased land in Newton County, Indiana to build and operate a dairy farm. The Army Corps of Engineers inspected the property and concluded that much of the land wasn't subject to the Clean Water Act (CWA). Two environmental advocacy associations, the Hoosier Environmental Council (HEC) and Indiana Audubon Society (IAS), and several named residents of Newton County disliked this decision and sued. They alleged that the administrative decision by the Corps violated the Administrative Procedures Act (APA) and that Natural Prairie violated the CWA. The court bifurcated the case to permit consideration of the APA claim first and thereafter remanded the Corps' decision as arbitrary and capricious. Today the court turns to the CWA claim. The associations request partial summary judgment that Natural Prairie's unpermitted filling of the Bogus Island Ditch violated the CWA. The court denies the motion and stays the case pending the Corps' revised jurisdictional determination.

BACKGROUND

Natural Prairie's dairy farm sits on the former lakebed of Beaver Lake. The lake was drained in the early 1900s to make way for farmland. To drain Beaver Lake, engineers constructed several large ditches and drainage canals to move the water from the lake into the nearby Kankakee River—a defined

"water of the United States" subject to various environmental regulations. Natural Prairie later altered certain ditches on the site and installed underground pipes to drain excess water.

After certain alterations, Natural Prairie contacted the Army Corps of Engineers to determine whether the ditches, lateral ditches, and the land were subject to federal regulation. After a site visit, the Corps concluded the land was not a jurisdictional wetland, and that only certain ditches—the Lawler and Bogus Island Ditches—were jurisdictional waters and under its regulatory control.

In July 2019, the associations sued the Corps and Natural Prairie. Under the APA, the associations sought judicial review of the Corps' approved jurisdictional determination (AJD). The associations also brought claims that Natural Prairie's filling and tiling of ditches without a permit, as well as altering a jurisdictional wetland without a permit, violated the CWA. *See* 33 U.S.C. §§ 1344 (permits for dredged or fill material), 1311(a) (prohibition of discharging a pollutant). The court bifurcated the case so that the APA claim could be addressed first.

In the APA phase, the associations argued that two of the Corps' determinations—that the lateral ditches and the wetland-like areas of the farm weren't jurisdictional waters—were arbitrary and capricious. The court reviewed these two determinations and found that each was arbitrary and capricious [ECF 80]. The court remanded the administrative determination to the Corps for reconsideration of its jurisdiction over Natural Prairie's land consistent with the opinion. The Corps reports that it is actively working on a revised AJD.

Not awaiting this revised decision, the associations filed for partial summary judgment on their CWA claim against Natural Prairie. They allege that Natural Prairie filled and tiled nearly half a mile of the Bogus Island Ditch without a permit, thereby violating the CWA. The court heard oral argument on this issue on February 6, 2023.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

To respond to growing concerns about pollution, Congress passed the CWA in 1972. Its purpose was to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To accomplish this goal, the CWA generally prohibits the discharge of dredged or fill material into navigable waters without a permit. 33 U.S.C. § 1344. "[T]he Secretary of the Army, acting through the Corps [may] issue permits for the discharge of dredged or fill material into the navigable waters at specified disposal sites." *Rapanos v. United States*, 547 U.S. 715, 7237 (2006) (quotations omitted).

Navigable waters mean the "waters of the United States." 33 U.S.C. § 1362(7). Such waters include "[w]etlands adjacent to waters" and "[t]ributaries of waters," but not "prior converted cropland."

3

33 C.F.R. §§ 328.3(a)(5), (7)-(8) (1986).[1] The associations argue that Natural Prairie filled the headwaters of the Bogus Island Ditch—a "water of the United States" or WOTUS in this field's vernacular—without a permit in violation of 33 U.S.C. § 1344. Natural Prairie argues that whatever it filled it was not the Bogus Island Ditch and instead a separate private ditch, not a WOTUS.

The court must first address the scope of its prior ruling. In September 2021, the court addressed the APA claim. The court determined that two conclusions by the Corps—that the site was prior converted cropland (not farmed wetland) and that the lateral ditches were not WOTUS—were arbitrary and capricious. The court was not asked to review the third administrative conclusion—that the Bogus Island Ditch and Lawler Ditch were jurisdictional WOTUS. In the APA phase, the court remanded the administrative determination to the Corps for reconsideration [ECF 80].

The parties disagree about what effect this prior decision has on the CWA claim today. Natural Prairie says the order vacated and remanded the administrative decision in its entirety, so the decision has no legal effect. The associations say the court limited its ruling to finding arbitrary and capricious the specific determinations they challenged about wetlands and lateral ditches, so the Bogus Island Ditch WOTUS determination still stands.

The court's prior ruling "remanded" the administrative decision "to the Corps for reconsideration of its jurisdiction over Natural Prairie's land consistent with this opinion." In so doing, the court found "the determination arbitrary and capricious and remands for further consideration." The APA provides that a reviewing court must "hold unlawful and set aside" agency action found to be arbitrary and capricious or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). "Set[ting] aside" an agency action is generally understood to mean its vacatur. *See* Set Aside, *Black's Law Dictionary* (11th ed. 2019)

---

[1] The Clean Water Rule was amended in 2015, but its implementation was enjoined in Indiana at the time of Natural Prairie's jurisdictional determination. Congressional Reporting Service, *"Waters of the United States" (WOTUS): Current Status of the 2015 Clean Water Rule* 6 (Dec. 12, 2018). The pre-2015 rule and definitions thus govern this suit.

4

("to annul or vacate"); *see also Dep't of Homeland Sec'y v. Regents of the Univ. of Cal.*, 140 S.Ct. 1891, 1901 (2020) (holding that the agency violated the APA and the agency decision "must be vacated"); *Checkosky v. SEC,* 23 F.3d 452, 491 (D.C. Cir. 1994) (*per curiam*) (Randolph, J., separate opinion) ("[s]etting aside means vacating"); *Cook Cnty. v. Wolf*, 498 F. Supp.3d 999, 1007 (N.D. Ill. 2020) ("set aside" means vacate).

"Although vacatur is the presumptive remedy for a violation of the [APA], courts have discretion to craft other remedies," including an order for partial vacatur. *Johnson v. United States Office of Pers. Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015). Partial vacatur occurs when "a court invalidates the unlawful parts of an agency action and leaves the valid parts in place." *Cook Cnty.*, 498 F. Supp.3d at 1006. In deciding whether an unlawful portion of an agency action can be severed from the entire action, courts consider whether the agency would have adopted the action but for the unlawful part and whether severance of the unlawful part would impair the function of the action as a whole. *See K Mart Corp. v. Cartier*, 486 U.S. 281, 294 (1988). Partial vacatur was not an appropriate remedy in the APA phase here.

The wetland and lateral ditch conclusions, found by the court to be arbitrary and capricious, were not severable from the conclusion that Bogus Island Ditch was a WOTUS. The Corps would not have adopted its decision but for the two arbitrary conclusions. An administrative determination that only addressed the Bogus Island and Lawler Ditches, but none of the other parts of the property, would have been incomplete. Severance of the wetland and lateral ditch conclusions would also impair the function of the administrative decision as a whole. It is the process used by the Corps to make a definitive, official determination whether aquatic resources in the review area are or are not jurisdictional. *See* 33 C.F.R. § 331.2. Allowing severance here would impair the decision's function of serving as the definitive determination of all aquatic resources in the review area, which here is the whole of Natural Prairie's property. Lateral ditches connect to the Bogus Island Ditch. Further, the Bogus Island and Lawler Ditches WOTUS determination may bear on the wetland determination such as to advise against

severability. The court views (and viewed) these determinations as inseverable. Partial vacatur was not ordered.

Nor did the court intend to remand the decision without vacatur. The APA says what it says, *see* 5 U.S.C. § 706(2)(A), and the court made no finding that would support this other unusual remedy at times seen in environmental litigation for mere minor legal defects, *see, e.g., Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) ("The decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequence of an interim change that may itself be changed.") (quotations omitted).[2] The jurisdictional determination had serious deficiencies, not minor defects.

The court set aside the Corps' administrative decision in keeping with the statute as written. 5 U.S.C. § 706(2)(A). In fairness, perhaps the court could have been more explicit in saying it remanded and set aside the decision, but the deficiencies in the administrative decision were arbitrary and capricious, and ubiquitous enough, that the court articulated no findings that would support an interpretation of a different remedy (partial vacatur or remand without vacatur) from the presumptive and default remedy mandated by statute. *See Johnson*, 783 F.3d at 663. This isn't unlike traditional remand. *See Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1207 (7th Cir. 1989) ("general rule [is] that upon a reversal and remand for further consistent proceedings the case goes back to the trial court and there stands for determination of the issues presented *as though they had not been determined before*").

At oral argument, the Corps reported that it is actively working on a revised jurisdictional determination. A revised agency decision, which will address the entirety of Natural Prairie's property,

---

[2] This concept seems to have emerged in the D.C. Circuit, *see Allied-Signal*, 988 F.2d at 151, and has since been employed in the First, Third, Fifth, Eighth, Ninth, Tenth, and Federal Circuits. *See* Stephanie J. Tatham, *The Unusual Remedy of Remand Without Vacatur*, Admin. Conf. of the United States 22, 27 (Jan. 3, 2014). Though remand without vacatur has been upheld in other circuits, this circuit has not addressed or endorsed this relief. Even so, the court adheres to the APA as written.

including the ditch in question in the summary judgment motion today, means that the court will decline to take up the same issues in the meantime.

Remand in cases like these "serve[s] the interest of allowing the Corps to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources." *Sierra Club v. Van Antwerp*, 560 F. Supp.2d 21, 25 (D.D.C. 2008). Further, remand "obviates the need to consider this case at a time when the Court's evaluation of the evidence would be highly unusual and problematic," as it may be if the court evaluated the agency's decision based on the entire record now available (including materials not available to the Corps at the time it made its decision) or if the court based its decision on the full administrative record available to the Corps at the time it issued its decision, in which case "the Court would effectively be issuing an advisory opinion." *Id.* Given this, "there is a substantial interest in delaying any judicial decision until the Corps has had an opportunity to reconsider its [] decision." *Id.*

Further, on remand the Corps may "modify its decision-making process in such a manner that would make these proceedings moot." *Id.* For example, if the court were to decide that the ditch in question is a WOTUS and that Natural Prairie unlawfully filled it without a permit, that decision could be affected if the Corps were to determine that the ditch is not a WOTUS on remand and the court gives deference to that determination. *See St. Clair v. Sec'y of Navy*, 155 F.3d 848, 851 (7th Cir. 1998) (standard for judicial review of an agency action is deferential); *see also Env't Coalition Broward Cnty., Inc. v. Myers*, 831 F.2d 984, 986 (11th Cir. 1987) (deference to the Corps' determination is "particularly appropriate in the case of complex environmental statutes such as the Clean Water Act.").

There are serious consequences at stake here, including potential substantial criminal and civil penalties, 33 U.S.C. §§ 1311(a), 1319(c)-(d), 1344(a), which make this determination too important to be rushed or to be decided without the consult of agency insight. *See Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983) ("When examining this kind of scientific determination … a reviewing court must generally be at its most deferential."); *N.Y. v. EPA*, 716 F.2d 440, 444 (7th Cir.

1983) (an agency's decision "particularly in technical areas, must be accorded substantial deference"). The court remanded the administrative decision to the Corps for reconsideration and will not step in now that the Corps is actively working on a revised decision per the court's order.

The CWA claim—that Natural Prairie filled and tiled nearly half a mile of the Bogus Island Ditch without a permit and that it altered a jurisdictional wetland without a permit—are all informed by the Corps' jurisdictional determination. Thus, the court will employ the doctrine of primary jurisdiction to stay this case pending a revised determination from the agency. This doctrine aims to promote "better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime." *Pharm. Rsch. & Mfrs. of America v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring). This doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *accord In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) ("allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight") (quotations omitted).

Congress, in passing the CWA, delegated power to agencies to protect WOTUS and related aquatic resources. The Environmental Protection Agency and Army Corps of Engineers share responsibility for administering and enforcing the CWA. The EPA has the authority to seek penalties for the discharge of pollutants into a WOTUS without a permit. 33 U.S.C. § 1319. The Corps has the authority to issue permits to discharge dredged or fill materials into a WOTUS. 33 U.S.C. § 1344(a). Part of this power includes determining jurisdiction. *See* 33 C.F.R. § 325.9. A number of issues within the Corps' competence are important to the proper resolution of the CWA claims, and the court prefers to know the Corps' position on these issues. Thus, the court invokes the primary jurisdiction doctrine. *See*

8

*Ass'n of Int'l Auto Mfrs. Inc. v. Mass. Dept. of Envtl. Prot.*, 196 F.3d 302, 304 (1st Cir. 1999) ("lack of a final EPA position would force us to decide those very issues that we referred to the agency initially […] [w]e invoked the primary jurisdiction precisely to avoid such a situation").

When a court invokes the primary jurisdiction doctrine, "the judicial process is suspended pending referral of such issues to the administration for its views." *W. Pac. R.R.*, 352 U.S. at 64. Staying the proceedings pending the Corps' revised jurisdictional determination promotes a more efficient process. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"). This stay doesn't apply to any informal or formal efforts at settlement negotiations. In addition, should any party have concerns that the Corps is failing to conduct its revised jurisdictional determination process, or in a timely manner, it may file a motion with the court for an appropriate order.

## CONCLUSION

Accordingly, because the court previously set aside and remanded the Corps' approved jurisdictional determination, the court DENIES the associations' motion for partial summary judgment with leave to renew as appropriate [ECF 95], DENIES AS MOOT the duplicative filing of the motion [ECF 93], and CAUTIONS the parties to comply with the district's local rules and this presider's orders concerning all future summary judgment filings at risk that the court may strike noncompliant submissions. *See* N.D. Ind. L.R. 1-3, 7-1(e), 56-1. The court STAYS this case pending the Corps' revised approved jurisdictional determination.

SO ORDERED.

March 20, 2023                                             *s/ Damon R. Leichty*
                                                                         Judge, United States District Court